Your Honor, my name is Mike Gaffney. I'm an attorney from Idaho Falls, Idaho. I represent Blaine Larsen Farms, Inc. I'd like to reserve roughly five minutes of rebuttal. This is a consolidated appeal, and I've never done one of those in front of this court, so I don't know how you allocate your time. Anyway, Larsen Farms is appealing from a grant of summary judgment that Judge Windmill entered in this case, and then heard on reconsideration. Basically, from our perspective, dramatically expanding Idaho state employment law. In essence, what he did was he had been constructively discharged as a matter of law. Now, Idaho has recognized the concept of constructive discharge since at least 1977. Counsel, why is this even a matter of constructive discharge? This person had a written contract that gave him a five-year term, and so as a question of contract law, either his employer did or did not follow the contract. It might not be constructive discharge, but if it breached the contract, it breached the contract. So why wasn't the significant alteration about six or eight months into the five-year term a breach of the contract? He was not allowed to continue in his role as being in charge, and he had been promised that role for five years. Well, he hadn't been promised that role. There were criteria that he had to fulfill in order to maintain that. Those are questions of fact, and the jury resolved them against your client. Well, actually, a lot of those questions were never presented to the jury because we never litigated the contract issue. We only litigated the severance issue. That's the whole point of this appeal. In other words, what happened at trial was in the plaintiff's opening, they withdrew their breach of contract claim, and that claim was never tried. And so the only thing left was whether he had been terminated and what Judge Windmill had concluded as a matter of law that he had been because his position within the company had been changed, or at least he had been offered a change of position. But the severance itself also arose out of the contract. In other words, I guess I just don't understand the relevance of the concept of constructive discharge to this case. Well, that's what Judge Windmill called it. Well, now it's here, so for us, what is the relevance of it? That's part of why it's here. I mean, Judge Windmill basically said that the district court – this is on page 18 of our brief – the U.S. district court found in its first decision that the Idaho state courts would agree as a matter of law with the principle that a material change in duties or reduction in rank constitutes a constructive discharge, which if unjustified constitutes breach of contract. Well, just taking out the words constructive discharge, does a material alteration of the duties equal a breach of contract under Idaho law? I think – I don't know, because that has never been addressed by the Idaho appellate courts. And in every case where there has been a constructive discharge allegation as a termination, that issue has gone to a jury, because there are a number of criteria which the jury has to go through to determine whether that constructive discharge happened or not. Basically, what has to happen is there has to be a situation where it is – the employment situation is so oppressive that a reasonable person, i.e. an objective standard, would cause a person to quit their job. And basically, if you – the jury instruction which Judge Windmill gave to the jury, it was instruction number 14, it's at 129 in the excerpt, says, under the law, any material change in duties or significant reduction in rank constitutes a termination. Now, what that did was it effectuated the severance provision, and the jury had no choice but to enforce the severance position. Our position is that is an incorrect statement of Idaho substantive law. And Judge Windmill admits that, first of all, he should have never even used the term constructive discharge because it was both unnecessary and potentially misleading. And then he also indicates that there – that the Idaho – and this is on page 17 of our brief – that the Idaho appellate courts have not specifically addressed this issue. And so what we have here is we've got a number of Idaho cases dealing with constructive discharge where the conditions of employment, whatever those facts may be, how oppressive that employment situation is. I mean, I don't know how many times we have to say, it doesn't fit this case. Nobody's talking about oppressive conditions. What they're talking about is somebody says, you thought you were CEO and you're not anymore. And there didn't seem to be – there seemed to be admissions that, yes, he was terminated as CEO. So you don't have to talk about a constructive discharge. You just talk about whether he was terminated as CEO. And the court says, well, that's been admitted. There's no dispute that he's terminated as CEO, and that amounts to a breach of contract. I understand that, but – Nothing was – he wasn't insulted daily or – the hostile work situation just doesn't fit this case. It's not what it's about. I can only argue what the judge instructed the jury. I can't – He doesn't talk about constructive discharge. He says, under the law, any material change in duties or significant reduction in rank constitutes a termination. And he was supposed to serve as president. And the Idaho Supreme Court and the Idaho Court of Appeals have never held that. What about Metcalf versus Intermountain Gas? Doesn't that say that a material change in duties or significant reduction in rank is a breach of contract, a breach of an employment contract in Idaho? A breach of an employment contract. We're talking about the severance provision. And that – The severance provision is part of the contract. I know, but it's a separate part of the contract. It's a – It's invoked on termination, but is it also invoked on any material breach? Only on termination. And that's the problem, is once Judge Windmill determined that there was a termination, which we were not allowed to basically argue because we went through this whole issue of whether he had – whether Mr. Crafton had breached, he basically directed a verdict that there was a termination. And so the award of damages was a foregone conclusion. And that's what I mean. You've got to look at the severance issue, at least from my perspective, differently than the rest of the contract. And if they wanted to sue on breach of contract, which they actually did but withdrew the first day of trial, for substantial damages, that's one thing. But my point is here is you've got a judge mixing all of this terminology and coming to the conclusion – I mean, jury instruction number 14 under the law, any material change in duties, et cetera, constitutes termination, was based upon his analysis that that was a, quote, constructive discharge. If you read the summary judgment decisions, it wasn't that we breached the other provisions of the contract. We had, by demoting him, terminated him. And that kicked in that specific portion of the contract, which had nothing really to do with the rest of the employment contract. And that's – like I said, that had never been discussed by the Idaho appellate courts. And so from our perspective, that was an overreaching conclusion because basically what he was doing was prognosticating as to what the Idaho Supreme Court would do. And the Idaho Supreme Court had never even addressed that issue. Well, if they haven't, that's exactly what the district court in a diversity case is supposed to do. They're supposed to figure out what would the Supreme Court of Idaho do in a situation like this. Well, I think under the Erie doctrine, they're given some latitude to do that. But if there is case law on point, I think the judge needs to follow that case law on point. Then what case says that if a president is removed as president, which is admitted in the – In Idaho? That's for admission. You know, that if a president is removed as president and he has a contract, that that's not a – doesn't breach the contract of employment. You've got a case that says you can contract to hire someone as president and say the second year that now you're a salesman. Is there an Idaho case saying that that doesn't – Not that I'm aware of. What I am aware of is there's no Idaho case that says that demotion, removal, et cetera, constitutes constructive discharge. I mean, I'm taking this from Judge Windmill's record. I'm not the one that made up these terms, you know. I mean, I – But we have de novo review. We don't have to be concerned with the specific wording of what he said. But if he reached the right result, then we have to consider that issue. Well, I understand that with deference to Judge Windmill. But he admitted – I mean, when the judge admits that there's no law on this issue in the State, when he states in his own writings that he imprudently used terminology, which quite frankly I think was very misleading when this whole constructive discharge claim came about, this changed the tenor of the case because this all happened the first day of trial. If some of this stuff would have been resolved, if the plaintiff would have made a decision earlier on in this case, the posture would be very, very different. But what happens is that we go into – we're defending a breach of contract claim, and we're not really particularly concerned with this severance issue because what they're claiming is his main contract was breached, and he's owed damages, I think, close to $2 million. That's what we're defending against. We're not defending against a constructive discharge claim, but all of a sudden this thing just morphs into one. And like I said, you reviewed de novo, but the fact of the matter is, I guess from our perspective, is Idaho has a very specific definition of constructive discharge. These facts don't fit that. And if Judge Windmill concludes that a demotion, a change of position, whatever, constitutes a termination of the contract, I read that literally. I can't interpret what he's trying to say other than what he says. Counsel, you've almost used all of your time, and I know you wanted to reserve a bit for rebuttal, and we'll give you some additional time for rebuttal when the time comes. Yeah, and I don't know how to handle this attorney fee issue because that's their appeal. Well, if they talk about it, you can talk about it. All right. Good morning. May it please the Court. My name is Jason Litt. I'm an attorney in Idaho Falls representing Stan Crafton. I think the Court today hit on an important issue, and that issue is this is not a case about constructive discharge. Judge Windmill realized that after his first decision on partial summary judgment. After he granted partial summary judgment, finding that in fact BLF, Blaine Larson Farms, had actually terminated or removed Mr. Crafton from his position as CEO in violation of his contract, then BLF's attorneys filed a motion for reconsideration and a motion to amend their admissions a second time. And in the Court's decision, which is in the record, in the excerpts of record towards the back, the Court indicates that perhaps it had been not prudent to use the term constructive discharge. The Court clarified that the point was not whether we had a sexual harassment type of discharge, which is what we commonly see and which is the case law from which the one case decided by BLF in this case. That case was based on a sexual harassment true constructive discharge case. That is not this case. And the district court correctly understood that, clarified that point in a footnote in his second decision, denying the motion for reconsideration and indicated that the issue was one of breach of contract and whether or not there was, whether or not a logical person, a logical and prudent person would believe that his tenure had been terminated. That is the standard. Does any breach of contract whatsoever invoke the termination package? No, Your Honor. I don't believe so. I mean, if there had been no material breach, then that probably would not have invoked the severance provision. It was the admission that did so. I mean, as I understand your position, it's that whatever it was, request 7 or 8, where it was admitted that he was removed from his position that triggered the termination, is that? That's correct. The admission was that the defendant, BLF, had removed Mr. Crafton as CEO of the company. Whereas President, I think they said plaintiff was not the CEO of the defendant. That's correct. The defendant admits that plaintiff was removed as president of the company pursuant to executive committee action December 15, 2003. So you're saying without that admission, you wouldn't leap all the way over to termination from a breach of contract? Yes, I would. That was the admission I thought that the defendant wanted relief from and wanted to do a substitute admission. No, he wasn't terminated. Rather, we said he could be a figurehead president. Correct. Or he could be a salesman with the same pay. And that at least in his first decision, Judge Windmill's reasoning was, well, a decrease of responsibility is a constructive termination. Well. What was his reasoning on the motion to reconsider? Well, I believe the reasoning was the same. He just used the term constructive discharge. He used the term, but not the constructive discharge analysis. So there's some equivocation going on here, not a substantive difference. The analysis that the court applied was, okay, we're here on a request to amend these admissions, which is reviewed on abuse of discretion rather than de novo under the summary judgment rule. The court considered whether or not allowing the amendment would materially advance the resolution of the case. And the point was, is there any difference between the two requests, the two admissions? One admission said he's been terminated or he's been removed from his position as president or CEO. And the new proposed admission was he, it eliminated that and said he was given two options, either to be a figurehead president so that he could, with absolutely no authority, so that he could stick around for three or four months until he could get another job, whichever comes first. He gets a job or three or four months passes, at which point he's terminated. That sounds like a termination to me, just a prospective one. The other option was he gets reduced and greatly reduced in his position. He gets reduced below from CEO. Excuse me. Go ahead. Just as a theoretical matter, that proposed amendment was superseded by a second proposed amendment. And the second proposed amendment recounted the conversation that occurred in December of 2003, but didn't talk about these two alternatives, I think. And what do we do? Do we consider the first proposed amendment implicitly withdrawn when there's a second proposed amendment tendered? Do we have to still deal with the first proposed amendment at all? Well, I think so. I mean, just from a timing matter, the district court had only one requested before it at the time that it made its initial decision. Which one was it? That was the second one in which the proposed amendment was changed from Kraft and was removed as president to the two alternatives. So what do we do with this second proposal that says, well, he asks, have I been removed? And Larson replied, yes. I mean, I'm summarizing it. So is that even in the case? That, yes. And I think that's kind of the third step in the court's analysis. The first step is, okay, was summary judgment under de novo review properly granted given the first request for admission? I think the answer to that is clearly yes. BLF admitted the very thing that we asked partial summary judgment on. And so the court was faced with granting that. In response to that, BLF requested their first amendment. That first amendment was, well, you know, we didn't really remove him. We just said you can't be CEO anymore, but you can be one of these other two things, which is a big demotion and really a termination. And so the court was faced at that time with doing that. And the question was, you know, an abuse of discretion under whether or not to grant a motion to amend the admissions. The judge worked with what he had at the time and rendered his decision, I believe, correctly. Then quite a bit later on, in December of 2005, I believe, just four months before trial, knowing that these matters are not heard immediately and that there would be a few months before the court could hear and decide the case, BLF files the second motion to reconsider and to amend yet again. And in their third amendments, they say, well, they don't say they did anything. The request was, admit that Brandon Larson, on behalf of BLF, Blaine Larson Farms, removed Stan Crafton from his position as president or CEO. And previously they said yes, and then the second one was, well, we gave him two options, neither of which was honoring the contract. Now, the third is none of that. It's Stan Crafton and the executive committee, Blaine Larson, Brandon Larson and the executive committee didn't even have authority to do it, period. And that's a very substantial change from its previous positions. And on that basis, the judge, I think, clearly did not abuse its discretion in saying, look, we're two months away from trial. And now you're saying there was no authority, period, whereas up until recently you were saying he ---- And there's another way to look at it, too, which is that regardless of whether people had actual authority, they aren't really contesting the removal. They're contesting the authority. I mean, that's another way one could look at it, although they say, well, that means that he must have quit. He misunderstood the authority, and therefore he quit. Correct. And, frankly, I don't understand. I've tried to understand the authority argument. And I think it's a nonissue because the issue established by the Idaho Supreme Court in 1977, I believe, in the Jackson v. Minidoka Irrigation District case, the court set forth the rule and the test for determining when an employee is terminated versus when the employee quits. And that test was whether the employer, by acts or words, would lead a prudent employee to believe that his tenure has been terminated. And that is the test in Idaho. To the extent that the knee decision in the court of appeals case that's heavily, heavily relied upon, briefing by the appellants in this case, to the extent that there's a conflict there, then this court has to follow Idaho's highest court, and that is the Supreme Court, who decided the Jackson case. That is the controlling standard. And so what we get to is it's not an issue of authority. It's an issue of whether or not Mr. Crafton, by BLF's actions and words, that led, logically led Mr. Crafton, as a prudent person, to believe that his tenure had been terminated. And I believe that under the first two admissions, that the answer has to clearly be yes. He was a prudent person, and anybody in that position would believe that he'd been terminated. Under the second proposed amendment, they request that there's no authority whatsoever, but that begs the question. The question is not whether or not there is authority. The question was whether or not Mr. Crafton, as a prudent man, through the acts of BLF and its employees, believed that he had been terminated, that his tenure had been terminated. And if the court were to accept and rule that the court, the district court, was incorrect in denying the amendments in that regard, I think the result would still be the same. As indicated previously, an argument this Court can affirm on any basis that's supported in the record. And in this case, the record is replete, replete with all kinds of admissions by Brandon Larson and the executive committee, but that they did in fact have authority and that they led Mr. Crafton to believe that they did have authority. Simply to begin, I mean, I can give some examples. In his deposition, Blaine Larson testified that when his son, the vice president of the corporation, Brandon Larson came to him, he said, he told him about the meeting he wanted to have with Stan Crafton, told him about the problems he'd been having with Stan Crafton, and told him the options of where to place, what position to place Stan Crafton in. And the response from Blaine Larson to that was, well, it's your decision. It's your decision. And I can get the record for the Court, if it would like, on that point. But the same account of the same conversation by Brandon Larson, Blaine's son, said the same thing. When giving that information to Blaine Larson, who is the owner of the corporation, the response was, it's up to you, you being either Brandon Larson or the Executive Committee. And that's in Mr. Brandon Larson's deposition as well. Those sites are at the excerpts of record at page 80 and further excerpts of record page 41. On top of that, I think the Court needs to look at very carefully the recorded Fortunately, Mr. Crafton took a tape recorder into these two meetings on December 15th, when he was terminated, or we probably would not be here. He was fortunate enough to have thought to bring that recorder into the meetings, and the tenor of what was going on there was incredible. He was berated for his performance. He was told repeatedly, although we're not firing you, you're not getting this job back. Well, I want to just be the CEO, or the President, pursuant to my contract. That's not an option. Acting as though it isn't an option. Acting as though he had the authority to say that. Authority here is really not an issue, and it hasn't really become an issue, a big issue, until the motion for reconsideration, which was decided two months before trial. In the second meeting, Brandon Larson, with the Executive Committee, actually finally, after beating him down, saying all kinds of rotten things about him and cursing at him quite a bit, Brandon Larson tells him, you know, Stan Crafton wanted some more time. Blaine Larson said, no, you can never make a decision. I want you to make a decision now. And the response was, Brandon Larson said, that's why we're firing you. I mean, that's why you're being removed as President. That's why we are removing you as President. Again, he refers to we. That's why we're firing you. That's why we're removing you as President. He continually asks Stan Crafton, tells him, pressures him, I want you to make a decision right now. We gave you those two options, either of which were acceptable. We gave you those two options, and I need you to make that decision now. No more time, no more phone calls. And so finally Stan said, and he said, take it or leave it. Now, that seems to me to be one who has the ability to make the offer, to either take or leave it. Counsel, you have exceeded your time. You may wrap up very briefly if you'd like. Thank you, Your Honor. For those reasons, Your Honor, we believe that applying the correct standard that is abuse of discretion on the issue of the two issues of whether or not the first requested amendments to the admissions and the second should be granted were properly denied. There is no abuse of discretion. And that Idaho law doesn't deviate from most law in the states. There certainly isn't a case in Idaho to support what VLF is saying. And, in fact, as the district court said, O'Dell v. Basave is a case that probably does support. It's not right on point, but it basically says a party who is fired and then obtains a contract for reinstatement to that original position does not have a contract and does not have to accept lesser employment once that offer or contract is withdrawn. So I would encourage the court to look at that O'Dell case, and I do think that supports us as well as the other case law cited by the district court and us in our briefing. Thank you, Counsel. Thank you. We'll restore two minutes for rebuttal, if you'd like to take it. Thank you, Your Honor. Let me address this authority issue because we brought that up in our brief. There's two cases that this court needs to look at. One is the O'Dell case v. J.R. Semplot v. Basave, and I don't think the court said or I think the court discussed the optional offer of a job in the context of whether he had to take that to mitigate his damages. I don't think they came to the conclusion that counsel said they did. Basically, they were talking about that in the context of you have to take another job in the company to mitigate your damages, and the court said, no, you don't have to do that. That's how that discussion arose. Our position is this case here is very, very similar, if not almost identical, to the Knee case where the superintendent was fired. He wasn't fired. He was asked to resign by the school district. And what's important here is that Stan Crafton admitted in his deposition to me, and this is Excerpt 33, that he knew that Blaine Larson was the board of directors. And if you look at that contract very closely, it says that he has to be terminated by the board of directors before that severance provision kicks in. Now, what happened was he had a committee, an executive committee that was subordinate to him that was having problems working with him. They didn't have the authority to terminate him. And, in fact, if you look through the deposition transcripts again, and I apologize for not having a cite, he said that he was their boss. So all of these discussions that are going on about, you know, you're not doing your job, Stan, you're not doing this, we've got problems here, this committee did not have authority to do anything. The only person in that company that had authority to terminate that contract was Blaine Larson. And Crafton admitted that he knew Blaine was the board of directors and that he reported directly to Blaine Larson. And, moreover, and this is what I find profoundly disturbing about this case, is when all of these problems started to occur with his subordinates, instead of acting as a CEO, he just ignored the problem. He wouldn't go talk to the owner of the company and the board of directors and saying, I've got a problem here with these people. He could have fired every one of those people based upon his authority. Counsel, you've exceeded your time, so if you could just wrap up briefly, that would be helpful. Okay. But the point I want to make is that we didn't find out about this line of authority until after we deposed Crafton, and that's why we moved to amend the admissions. We didn't know what his communication lines with Blaine Larson, the owner, were, and that's why the amendment was made. Up until that time, we had not established that. So. Thank you, counsel. We appreciate the arguments of both counsel. They've been very helpful. And we will stand adjourned.
judges: Canby, Graber, Gould